**The STATE of Ohio, Appellee,**

**v.**

**BLONSKI, Appellant.**

[Cite as *State v. Blonski* (1997), 125 Ohio App.3d 103.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2654–M.

Decided Dec. 31, 1997.

*Dean Holman,* Medina County Prosecuting Attorney, *Scott G. Salisbury* and *Joseph F. Salzgeber,* Assistant Prosecuting Attorneys, for appellee.

*Daniel J. Marco,* for appellant.

BAIRD, Judge.

On August 30, 1995, James Blonski pled no contest to the offense of domestic violence against his wife, Linda Blonski, in the Wadsworth Municipal Court. He was sentenced to thirty days in jail for the offense, which was suspended, and he was placed on probation for one year.

On November 15, 1995, Blonski again pled no contest to the offense of domestic violence. The Wadsworth Municipal Court sentenced Blonski to sixty days in jail, suspended the sentence, placed Blonski on a probation for two years, and fined him $500. As a condition of his probation, Blonski was required to perform twenty-four hours of community service for each of the above offenses. In addition, Blonski was required to submit to a thirty-day period of home arrest for the latter offense.

The facts of Blonski's present conviction are as follows: On May 25, 1996, Blonski became angry with his wife, Linda Blonski, when she asked him to work on their bathroom. Linda said she wanted a divorce. Blonski told Linda that if she contacted a lawyer, "that would be the end." Blonski had previously threatened to burn down the house, so Linda understood the above statement to be a threat to kill her and burn the house down. Linda testified that Blonski told her, "You will never be able to support yourself. The only way you could ever live and support yourself would be on your back." At that point, Linda decided that "[t]hat was the last straw" and that she was never going to take anything like that from him again.

Earlier that day, Blonski and Linda had discussed attending a Greek festival together. After working in the yard for several hours, Blonski came in the house, showered, and asked Linda if she could be ready to go out at 6:00. Linda shook her head no. Blonski then told Linda she was crazy and that he wanted the credit cards. Linda told Blonski to go ahead and take them. Linda then thought to herself, "I don't have any money. He's got everything in his name and I don't have any money." Linda decided that she was not going to give him the credit cards, and she grabbed and held on to her purse. As they were struggling over the purse, Blonski pushed Linda onto the bed and slapped her leg with an open hand. Linda testified that this slap "hurt" and "stung," but that it didn't leave a mark. When Linda attempted to get up, Blonski placed his hand on her throat and pushed her on the bed. Blonski is considerably larger than Linda and has a brown belt in karate. Linda ran into the spare bedroom, locked the door, took the credit cards out of the wallet in her purse, and hid them. Linda then dialed 9-1-1, but hung up because she was frightened. Blonski started pounding on the door, cracking it, demanding to be let in. Blonski ceased pounding on the door, retrieved the key, unlocked the door to the spare bedroom, obtained Linda's purse, and dumped the contents of the purse onto the couch and took her wallet. Linda ran into the kitchen and again dialed 9-1-1. Again, she hung up the phone. She got into her car and drove. After driving a short distance, she realized there was no gas in the car, and she had no money, driver's license, or credit card. Linda returned home. The phone was ringing as Linda entered the house. The police were calling back from the 9-1-1 calls. Linda told the police what had happened and in which direction Blonski had driven. Within ten minutes, Deputies Bruce Stevanus and Tim Shively from the Medina County Sheriff's Office arrived at the Blonski residence. Blonski was apprehended at a restaurant a short time later.

On July 25, 1996, Blonski was indicted for domestic violence, in violation of R.C. 2919.25 with a specification for a previous domestic violence conviction. Certified copies of the original sentencing judgment entries for Blonski's two prior

domestic violence convictions were admitted as exhibits in his jury trial on the present offense. The trial court also allowed the state to present testimonial evidence of the acts leading up to the prior convictions, as well as testimony as to other acts of violence toward Linda by Blonski, although those acts did not result in convictions.

The jury found Blonski guilty of domestic violence with the prior-conviction specification. Pursuant to the domestic violence statute, because of the specification the offense constituted a felony of the fourth degree. On December 13, 1996, the trial court sentenced Blonski to six months in the Lorain Correctional Institution, suspended the sentence on the condition that Blonski serve thirty days in the Medina County Jail. The trial court stayed Blonski's sentence pending this appeal.

## I

Blonski's first assignment of error states:

"The trial court denied appellant a fair trial and due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States as well as Article I, Section 10 of the Ohio Constitution."

R.C. 2919.25 provides:

"(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

"* * *

"(D) Whoever violates this section is guilty of domestic violence. * * * If the offender previously has been convicted of domestic violence * * *, a violation of division (A) or (B) of this section is a felony of the fourth degree * * *."[1]

Blonski argues that testimony as to the details of his prior convictions for domestic violence, as well as details of other acts of violence that did not result in convictions, was improper character evidence and inadmissible. The state argues that evidence of Blonski's prior crimes and acts was admissible pursuant to Evid.R. 404(B) and as proof of a necessary element of felony domestic violence pursuant to R.C. 2919.25(D). We will the discuss the latter issue first.

### A. Prior Conviction as Element

"Where the existence of a prior offense is an element of a subsequent crime, the state must prove the prior conviction beyond a reasonable doubt, just

---

1. This statute was subsequently amended by 1995 Am.Sub.S.B. No. 2, effective July 1, 1996, which substituted "fifth" for "fourth" in division (D).

as it must prove any other element. The [factfinder] must find that the previous conviction has been established in order to find the defendant guilty on the second offense." [2] (Citation omitted.) *State v. Day* (1994), 99 Ohio App.3d 514, 517, 651 N.E.2d 52, 53. This situation is distinguished from one in which an earlier conviction merely affects the penalty for a subsequent offense. *Id.* A prior conviction that raises the degree of the later offense is an element of the subsequent offense and evidence of the prior conviction is admissible to prove the later, more serious offense. *Id.*

R.C. 2945.75(B) governs evidence of prior convictions and provides:

"Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."

The plain language of the above statute requires that the state present more than the piece of paper evidencing a prior conviction. "[A]dditional evidence, besides a certified copy of a judgment entry, must be presented to prove a prior conviction of an accused beyond a reasonable doubt. Without such evidence, there can be no enhancement." *State v. McCoy* (1993), 89 Ohio App.3d 479, 483, 624 N.E.2d 1102, 1104–1105. But Blonski's assignment of error raises a dilemma. How much more evidence is needed, and how much is too much, thereby unduly prejudicing the defendant? In other words, the state is required to prove to the jury that the individual named in the certified copy of the entry of judgment is the same individual named as the present defendant. However, the state must do so in such a manner as not to allow the jury to hear details of the prior crimes, thereby causing the jury to convict the defendant on the basis of those crimes and not on the basis of the evidence before it of the present crime.

In *State v. Owens* (Nov. 30, 1994), Montgomery App. No. 14068, unreported, 1994 WL 683395, the court found that the testimony of an undercover police detective who observed the defendant with cocaine and a gun was more prejudicial than it was probative of the prior conviction. Therefore the admission of that evidence violated the defendant's right to a fair trial.

In *Day, supra,* 99 Ohio App.3d at 517, 651 N.E.2d at 53–54, the court held that R.C. 2945.75(B) *limits* the scope of prior-conviction evidence at trial to the certified copy of the judgment entry and evidence sufficient to identify the defendant named in the judgment entry as the offender in the case at bar. "This

---

2. Where the earlier conviction merely affects the penalty imposed for a subsequent offense and is not an element of the subsequent offense, the defendant may request that the trial court determine the existence of the prior conviction at the sentencing hearing. *State v. Day,* 99 Ohio App.3d at 517, 651 N.E.2d at 53–54.

procedure eliminates surplus evidence which could unduly emphasize a defendant's prior conduct to the jury." *Id.* When evidence of a prior conviction is introduced to increase the degree of the offense, a limiting instruction to the jury regarding the purpose of the evidence of the prior conviction can be sufficient to counteract potential prejudice. See *State v. Rivera* (1994), 99 Ohio App.3d 325, 330, 650 N.E.2d 906, 909.

In the case at bar, the trial court allowed Linda to testify as to the circumstances of Blonski's prior domestic violence convictions. Blonski objected to this testimony. Linda testified that Blonski's's first domestic violence conviction arose when Blonski threw furniture, knocked holes in walls, and then held Linda down on the floor with a clay pot over her head, threatening her life.

Linda testified that Blonski's second domestic violence conviction arose when Blonski threw a glass of orange juice in Linda's face and again threatened her life. Linda was crying as she testified to these events.

These details clearly convey more information than the jury needed to identify Blonski beyond a reasonable doubt as the defendant named in the certified judgment entries. If the only grounds for admission of this testimony had been to establish Blonski's prior convictions for domestic violence, its admission would have been more prejudicial to Blonski than probative of the prior convictions. However, the trial judge allowed Linda's and their daughter Stacy's testimony as to Blonski's prior conduct pursuant to Evid.R. 404(B) to show absence of accident or Blonski's intent or purpose to commit domestic violence against Linda. Upon submission of the case to the jury, the trial court gave the jury a limiting instruction, saying:

"Evidence was received about the commission of acts other than the offense with which the defendant is charged in this trial. That evidence was received only for a limited purpose.

"It was not received and you may not consider it to prove the character of the Defendant to show he acted in accordance with that character.

"If you find that the evidence of other acts is true and that the Defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the absence of accident or the Defendant's intent or purpose to commit the offense charged in this trial. The evidence cannot be considered for any other purpose.

"* * *

"If your verdict was guilty of domestic violence, you will separately decide whether the Defendant was previously convicted of domestic violence.

"* * *

"Evidence was received that the defendant was convicted of domestic violence. That evidence was received because a prior conviction is an element of the offense charged. It was not received and you may not consider it to prove the character of the Defendant in order to show that he acted in accordance with that character."

■ The record supports the trial court's finding that evidence as to Blonski's prior acts of violence against Linda was admissible pursuant to Evid.R. 404(B), as we will explain below. Therefore, although the trial court may have erred in admitting Linda's testimony as to the circumstances leading to Blonski's prior domestic violence convictions in order to prove the prior-conviction specification, because the evidence was admissible on other grounds, the error is harmless.

## B. Evid.R. 404(B)

Evid.R. 404(B) states:

"Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The trial court found that evidence of Blonski's prior acts of domestic violence towards Linda was admissible to show either absence of accident or Blonski's intent or purpose to commit domestic violence. We will address these grounds of admissibility one at a time.

### 1. Absence of Accident

■■ Evidence of prior bad conduct is admissible to show absence of accident or mistake. The threshold criterion for judging the admissibility of evidence of extrinsic acts under the rule is "whether the other acts evidence can show by substantial proof any of those things enumerated, such as proof of * * * absence of mistake or accident." *State v. Davis* (1991), 62 Ohio St.3d 326, 338, 581 N.E.2d 1362, 1374. For example, in *State v. Anderson* (July 21, 1993), Hamilton App. No. C–920733, unreported, 1993 WL 271005, the court of appeals upheld the trial court's admission of evidence of the defendant's prior acts of domestic violence against her husband, whom she was accused of stabbing to death, in order to refute the defendant's claim that her husband's death was accidental and occurred during a struggle over a knife. In that case, the court held that "the issue of whether the stabbing was intended or accidental was the subject of a genuine controversy," and therefore the trial court did not abuse its discretion in admitting the evidence pursuant to Evid.R. 404(B), especially where the trial

court was careful to explain to the jury the limited purpose for which it was to consider the evidence.

In the case at bar, there was no indication that Blonski claimed that he accidently hit Linda or pushed her onto the bed by her throat. In his statement to Deputy Stevanus on May 25, 1996, Blonski stated:

"She wanted me to finish building the bathroom. I said I was working outside today. Later I ask [*sic*] for my credit card. She refused. Then she swung her purse hitting me. She told me that she wanted me dead. I left at this time."

At trial, Blonski testified that there was "tugging" on Linda's purse, but denied that he had slapped her, grabbed her around the throat, or pushed her on the bed. On cross-examination, Blonski denied even that Linda ended up on the bed at all.

"Q. Now, with regard to the tugging over the purse—

"A. Yes.

"Q.—that happened on May 25, 1996, you've told this jury that you did not put your hands on your wife that day?

"A. We just tugged on a purse.

"Q. Did you push her on the bed?

"A. No.

"Q. Did she fall on the bed?

"A. No.

"Q. She never fell on the bed at any time?

"A. No.

"Q. Not even after the tugging on the purse, she never was on the bed?

"A. No.

"* * *

"Q. And she was able to maintain herself throughout the struggle. She never lost her balance or never ended up on the bed?

"A. Correct."

█ Blonski did not claim that he accidently pushed Linda onto the bed on that she fell and might have mistakenly thought he pushed her. Because there was no claim of accident or mistake to refute, the evidence of Blonski's prior acts of domestic violence should not have been admitted on that basis.

## 2. Intent

 "[P]rior bad acts by a defendant against the same victim are * * * admissible in domestic violence cases to prove the defendant's intent * * *." *State v. Johnson* (1994), 73 Ohio Misc.2d 1, 3, 657 N.E.2d 383, 384.[3] However, when using "other acts" evidence, to show the defendant's intent, the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan, or system must have been utilized to commit the offense at issue and the other offenses. *State v. Elliott* (1993), 91 Ohio App.3d 763, 771, 633 N.E.2d 1144, 1148–1149. In the case at bar, both Blonski and Linda testified to their ongoing disagreements about finances and control within the marriage. These disagreements would occasionally escalate into Blonski's threatening, pushing, shoving, or hitting Linda. These prior incidents are certainly probative of Blonski's intent to cause harm to or threaten to cause harm to Linda during the May 25, 1996 incident for which Blonski was convicted in the court of common pleas. The domestic violence statute requires that the state prove that the act was done knowingly; we can see no reason why this cannot be done with proof that it was done intentionally.

Because evidence of Blonski's prior acts of violence against Linda were admissible to show Blonski's intent in committing the present offense, his first assignment of error is overruled.

## II

Blonski's second assignment of error states:

"The verdict is against the manifest weight of the evidence."

 "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011; see, also, *State v. Johnson* (1995), 107 Ohio App.3d 723, 726, 669 N.E.2d 483, 485.

In a recent case, the Supreme Court of Ohio refined and clarified the law regarding determinations of manifest weight of the evidence. The court stated:

"Weight of the evidence concerns the 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than

---

3. In *Johnson,* the trial court admitted into evidence the *facts* of the defendant's five prior convictions for domestic violence against the defendant's former wife.

the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*' " (Emphasis *sic.*) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546, quoting Black's Law Dictionary (6 Ed.1990) 1594.

The court further stated, "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d at 546–547, quoting *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661. Nevertheless, the weight to be given the evidence is primarily for the trier of fact, *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus, as is the credibility of the witnesses. *State v. Messer* (1995), 107 Ohio App.3d 51, 56, 667 N.E.2d 1022, 1025. " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs *heavily* against the conviction.' " (Emphasis added.) *Thompkins, supra,* 78 Ohio St.3d at 387, 678 N.E.2d at 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721.

Blonski argues that there was no objective evidence of physical harm. This argument is meritless. One does not have to cause serious injury to be guilty of domestic violence. A defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all. *State v. Nielsen* (1990), 66 Ohio App.3d 609, 612, 585 N.E.2d 906, 907–908. Any harm is sufficient, and the state presented evidence that Blonski caused harm to Linda when he slapped her and pushed her down.

Blonski then argues that he has denied the allegations against him and that there was no eyewitness testimony to the May 25, 1996 incident. This argument, too, lacks merit. Domestic violence is often a private crime, occurring in one's own home. Linda's testimony of the incident was reasonably believed by the jury, and Blonski's denial was reasonably given less credence. We cannot say that the jury "clearly lost its way" in finding Blonski guilty of domestic violence against Linda. Blonski's second assignment of error is overruled.

### III

Blonski's third assignment of error states:

"The trial court erred failing to grant appellant's Crim.R. 29 motion for a judgment of acquittal made at the end of the state's case and renewed at the end of all evidence."

The standard we apply when determining whether a Crim.R. 29 motion for acquittal was properly denied is this: was the evidence such that reasonable minds could reach different conclusions as to whether each material element has been proven beyond a reasonable doubt? *State v. Ward* (1992), 86 Ohio App.3d 4, 7, 619 N.E.2d 1119, 1121.

R.C. 2919.25(A) provides:

"No person shall knowingly cause or attempt to cause physical harm to a family or household member."

The R.C. 2901.22(B) defines "knowingly" as an awareness that conduct will cause a certain result or will probably be of a certain nature. R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury * * * regardless of its gravity or duration." The state presented evidence that Blonski caused some pain when he slapped Linda, or at least attempted to cause some harm when he slapped her and pushed her down. Linda testified that Blonski hit her "hard with an open hand" and was angry and out of control. The jury could reasonably infer from Linda's testimony, and Blonski's testimony as well, that he did so knowingly, in order to gain possession of Linda's purse. Therefore, the trial court properly denied Blonski's motion for acquittal. Blonski's third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, J., concurs.

DICKINSON, P.J., dissents.

DICKINSON, Presiding Judge, dissenting.

I believe the other-acts evidence was received in violation of Evid.R. 404(B). Accordingly, I would reverse.