DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Demitrus Loren Thompson, appeals his conviction in the Lorain County Court of Common Pleas. We affirm.
 I.
At 2:00 a.m. on November 21, 1997, Officer William Brown of the Lorain City Police Department was dispatched to the home of Christine Olah pursuant to a report of a burglary in progress. Upon arriving at the residence, Ms. Olah informed him that Mr. Thompson was lurking about in the vicinity of the residence and that she was afraid that he meant to harm her. Officer Brown searched the area around Ms. Olah's home and, utilizing his flashlight, peered inside her vehicle, which was parked outside. When he found no one, Officer Brown concluded that Ms. Olah was safe and, after patrolling the area for a few minutes in his squad car, left the area. Ms. Olah, who was still worried about Mr. Thompson, decided to travel to her mother's home where she would not be alone.
Ms. Olah entered her automobile and proceeded toward her mother's residence. As she passed over a bridge, Mr. Thompson, who had secreted himself underneath the hatchback compartment cover, climbed out from underneath the hatchback cover, over the rear seat, then over the front seat, until he was seated next to Ms. Olah. Ms. Olah continued driving. Mr. Thompson then retrieved a pen from the glove compartment of Ms. Olah's automobile and, after brandishing the pen in a threatening manner and verbally threatening Ms. Olah, demanded to be taken to Super Kmart. Ms. Olah complied. Once they arrived at Super Kmart, Mr. Thompson demanded that Ms. Olah purchase a toy so that she could cash her paycheck. Ms. Olah purchased the toy by negotiating her paycheck and received over $200 in cash. Mr. Thompson then accompanied Ms. Olah back to her vehicle and demanded that she give him $200. Ms. Olah gave Mr. Thompson the amount he requested. Mr. Thompson then informed Ms. Olah that he wished to be taken to his residence. Ms. Olah took him to his residence and then proceeded to her mother's residence.
At approximately 3:30 a.m. on November 21, 1999, Ms. Olah telephoned the Lorain City Police Department to report the incident. Officers Mike Failing and Jeff Jackson were dispatched pursuant to her call. After taking Ms. Olah's statement, the officers proceeded to Mr. Thompson's residence where they arrested him.
On December 17, 1997, the Lorain County Grand Jury indicted Mr. Thompson for robbery, in violation of R.C. 2911.02(A)(3), domestic violence after having been previously convicted of the same, in violation of R.C. 2919.25(C), and abduction, in violation of R.C. 2905.02(A)(1). Mr. Thompson pleaded not guilty on December 23, 1997, and the case proceeded to trial. After a three-day jury trial beginning on March 31, 1998, Mr. Thompson was found guilty on all charges in a verdict journalized on April 6, 1998. He was sentenced accordingly. This appeal followed.
 II.
Mr. Thompson asserts four assignments of error. We will address each in turn.
A. First Assignment of Error
THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED THE APPELLANT'S ORAL MOTION TO DISMISS THE CASE WHEN THE STATE USE [sic] A RACIALLY MOTIVATED PEREMPTORY CHALLENGE TO DISMISS A MINORITY FROM THE JURY ON THE BASIS OF RACE.
Mr. Thompson avers that the prosecution used one of its peremptory challenges to exclude a person, who is of the same racial minority as Mr. Thompson, from the jury based upon the juror's race. Moreover, he asserts that the trial court erred in overruling his objection despite the fact that it was not raised until after the jury was impaneled. We disagree.
To establish a prima facie case of racial discrimination by the opposing party in its use of peremptory challenges,
 a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently "discriminating" device, permitting "`"those to discriminate who are of a mind to discriminate."'" The litigant must then show an inference or inferences of racial discrimination by the striking party.
 The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present.
 Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation "related to the particular case to be tried." A simple affirmation of general good faith will not suffice. However, the explanation "need not rise to the level justifying exercise of a challenge for cause." The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely a pretext for exclusion on the basis of race.
 Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed.
(Citations omitted.) Hicks v. Westinghouse Materials Co. (1997),78 Ohio St.3d 95, 98-99.
If one wishes to challenge the use of a peremptory challenge, one "must object to the racially motivated use of peremptory challenges prior to the jury's being sworn." State v. Robertson
(1993), 90 Ohio App.3d 715, 719. Moreover, "the requirement of contemporaneous objection with the exercise of a peremptory challenge is based upon practical necessity and basic fairness in the operation of the judicial system." Id. Hence, an objection made to peremptory challenges is untimely if made after the jury is sworn. Id.
In the instant case, the jury was duly impaneled, having been accepted and sworn, prior to Mr. Thompson's objection to the prosecution's use of one of its peremptory challenges during jury selection. Moreover, the trial court had even instructed the jurors as to their duties and responsibilities as jurors, as well as how the trial would be conducted when Mr. Thompson objected to the composition of the jury. Hence, we conclude that Mr. Thompson objected in an untimely manner to the prosecution's use of one of its peremptory challenges and the composition of the jury; therefore, his objection is not properly before this court. Mr. Thompson's first assignment of error is overruled.
B. Second Assignment of Error
THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED THE APPELLANT'S OBJECTION TO USE [sic] OF OTHER BAD ACTS TO GO TO THE JURY [sic].
Mr. Thompson argues that the trial court erred when it allowed testimony concerning Mr. Thompson's past conviction for domestic violence to be admitted over his objection. Moreover, he avers that, although his previous conviction for domestic violence was an element of the crime charged, the prior conviction was inadmissible and prejudicial because he had stipulated to the existence of the prior conviction. We disagree.
"The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere." State v. Hymore (1967),9 Ohio St.2d 122, 128. Abuse of discretion is not a mere error of judgment, rather it is "perversity of will, passion, prejudice, partiality, or moral delinquency." State ex rel. Shafer v. OhioTurnpike Comm. (1953), 159 Ohio St. 581, 590-91. Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).
Generally, evidence of prior criminal acts, wholly independent of the crime for which defendant is on trial, is inadmissible. State v. Thompson (1981), 66 Ohio St.2d 496, 497. R.C. 2945.59 codifies exceptions to this rule, providing:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Evid.R. 404(B) states that
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evid.R. 404(B) is in accord with R.C. 2945.59. State v. Broom
(1988), 40 Ohio St.3d 277, 281. It is not required that the "other acts" are "like" or "similar" to the crime charged, but only that they "tend to show" any of the enumerated things. Statev. Hill (1992), 64 Ohio St.3d 313, 322-23.
A defendant's prior conviction may also be admitted into evidence when it is one of the elements of the crime charged.State v. Blonski (1997), 125 Ohio App.3d 103, 108-9.
 Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.
R.C. 2945.75(B). Hence, even if a defendant's prior convictions are inadmissible under the Evid.R. 404 (B) and R.C. 2945.59, evidence of prior convictions maybe admissible under R.C. 2945.75.
The trial court's admission of evidence concerning Mr. Thompson's prior conviction, after he had stipulated to it, was not prejudicial because the stipulation was only to the authenticity of the document evidencing his conviction. Mr. Thompson was charged with domestic violence under R.C. 2919.25(C), which includes as one of its elements under Subsection D, the prior conviction of the defendant for domestic violence. Hence, Mr. Thompson's prior conviction was a material element of the prosecution's case, and evidence could properly be adduced at trial on that issue. See Blonski, 125 Ohio App.3d at 108-9. Mr. Thompson stipulated that the documentation of his prior conviction was admissible evidence and the state accepted his stipulation to avoid calling a witness to testify to its authenticity. "`* * * [S]tipulations to prior convictions are widely recognized as a practice which benefits defendants by precluding the State from introducing evidence as to the details of the prior convictions.'"State v. Adams (1988), 37 Ohio St.3d 295, 297. However, Mr. Thompson only stipulated that the documents evidencing his prior conviction were authentic not that his prior conviction fulfilled one of the elements of the crime charged. Hence, we conclude that questions concerning Mr. Thompson's prior conviction were harmless, as the jury would have learned of his prior conviction in any event.
The state asserts that the facts surrounding his previous convictions were admissible under Evid.R. 404(B). The state asserts that the crimes were so alike or similar that the facts surrounding Mr. Thompson's prior conviction became admissible. We decline to hold that the crimes were alike or similar as envisaged by Evid.R. 404(B) solely because they involved the same parties or because the victim was "surprised" in both instances. However, Mr. Thompson was charged with domestic violence, which requires the state to show that Mr. Thompson "knowingly cause[d] a family or household member to believe that the offender will cause imminent physical harm to the family or household member." R.C.2919.25(C). Hence, we conclude that the trial court did not err in admitting the details of Mr. Thompson's prior conviction as it was evidence that tends to show Ms. Olah's state of mind during the current incident and whether Mr. Thompson knew of Ms. Olah's fear in the current case — both elements of the crime charged. Moreover, we ascertain from the record that the details of his prior conviction were not overly prejudicial.[1] Mr. Thompson's second assignment of error is overruled.
C. Third Assignment of Error
THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S.
CONSTITUTION AND ARTICLE I SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, WAS DENIED WHEN THE TRIAL COURT DENIED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL ON EVIDENCE WHICH WAS INSUFFICIENT AS A MATTER OF LAW.
Mr. Thompson asserts that the state failed to adduce evidence at trial on each of the elements of the crimes charged. He avers that the state failed to show any use of force by him and that this is one of the required elements of robbery. Mr. Thompson also asserts that the state must show that the victim suffered physical harm in order to convict one of domestic violence and that no evidence of physical harm was adduced. Furthermore, Mr. Thompson asserts that to be convicted of abduction the state must show that the victim was removed from one place to another by force or threat of force and that no evidence of such force or threat of force was adduced at trial. Hence, he asserts that his convictions were based on evidence that was insufficient as a matter of law. We disagree.
"The test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Statev. Leggett (Oct. 29, 1997), Summit App. No. 18303, unreported, at 3-4. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. at 4. "In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
Mr. Thompson asserts that his conviction of robbery was supported by insufficient evidence, as the prosecution showed no evidence of force. The crime of robbery requires that the prosecution show that, while attempting or committing a theft or fleeing therefrom, one "[u]se[d] or threaten[ed] the immediate use of force against another." R.C. 2911.02(A)(3). The evidence adduced at trial, viewed most favorably to the prosecution, showed that Mr. Thompson held a pen in a threatening manner and demanded to be taken to Super Kmart. Hence, we conclude that Mr. Thompson's conviction of robbery was not based on evidence, which was insufficient as a matter of law.
A domestic violence conviction must rest upon evidence that the victim was in imminent fear of physical harm, which Mr. Thompson asserts was lacking here. To sustain a conviction of domestic violence on appeal the prosecution must have adduced evidence at trial that the defendant "knowingly cause[d] a family or household member to believe that the [defendant would] cause imminent physical harm to the family or household member." R.C.2919.25(C). Evidence at trial, viewed most favorably to the prosecution, showed that Ms. Olah feared imminent physical harm when Mr. Thompson crawled from beneath the hatchback cover and threatened her with a pen. Hence, we conclude that his conviction of domestic violence was not based on evidence that was insufficient as a matter of law.
Mr. Thompson asserts that the evidence at trial did not show that any force or threat of force was used by him to convince Ms. Olah to drive him to Super Kmart as is required to sustain a conviction of abduction. To convict one of abduction, the prosecution must show that "[b]y force or threat, [one] remove[d] another from the place where the other person is found[.]" R.C.2905.02(A)(1). Evidence adduced at trial, when viewed most favorably to the prosecution, showed that Mr. Thompson threatened Ms. Olah with death and with being stabbed with a pen if she did not drive him to Super Kmart and then accompany him inside. Moreover, she complied with his commands. Hence, we conclude that the evidence adduced at trial was not insufficient to sustain Mr. Thompson's conviction of abduction. Mr. Thompson's third assignment of error is overruled.
D. Fourth Assignment of Error
THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S.
CONSTITUTION AND ARTICLE I SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, WAS DENIED WHEN HE WAS CONVICTED OF AND SENTENCED FOR THE CRIMES OF ROBBERY, DOMESTIC VIOLENCE AND ABDUCTION ON EVIDENCE WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Thompson avers that the jury's decision was based on evidence so insufficient that the jury clearly lost its way and erred as a matter of law when it convicted him based upon such evidence. Moreover, he argues that his conviction was a miscarriage of justice. We disagree.
When the manifest weight of the evidence is challenged,
 "[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Furthermore, "[i]t is axiomatic that this court does not sit as a trier of fact.
 Rather, `on the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts.'" Kuempel Serv., Inc. v. Zofko (1996), 109 Ohio App.3d 591, 598, quoting State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
Mr. Thompson's conviction was not against the manifest weight of the evidence. The jury did not loose its way and create a manifest miscarriage of justice by convicting Mr. Thompson. Moreover, the trier of fact had the opportunity to view the witnesses and weigh their credibility. Furthermore, the evidence, viewed in a light most favorable to sustaining the jury's verdict, showed that Mr. Thompson concealed himself in the rear of Ms. Olah's car, then emerged brandishing a pen and ordered Ms. Olah to take him to Super Kmart where he forced her to purchase a toy to cash her pay check. He then stole $200 from Ms. Olah and forced her to drive him to his residence. Hence, after thoroughly reviewing the record, we cannot say that the jury lost its way and committed a miscarriage of justice, or that Mr. Thompson's conviction was against the manifest weight of the evidence. Mr. Thompson's fourth assignment of error is overruled.
 III.
Mr. Thompson's four assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM G. BATCHELDER FOR THE COURT
BAIRD, P.J., CARR, J., CONCUR
[1] The trial court also instructed the jury that evidence of Mr. Thompson's previous conviction was to be considered only on the issue of whether Mr. Thompson had been convicted previously of domestic violence and "may not be considered for any other purpose." Hence, as we generally presume that the jury followed the instructions given by the trial judge, we conclude that any prejudice that accrued to Mr. Thompson was rectified by the court's instruction. See Wray v. Parsson (1995),101 Ohio App.3d 514, 517.