OPINION
Defendant-appellant John Allen King, Sr. appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On November 18, 1998, the Stark County Grand Jury indicted appellant on one count of domestic violence in violation of R.C.2919.25(A). The indictment stated that appellant had been previously convicted of domestic violence "in Canton Municipal Court (Case No. 97CRB04324) on December 1, 1997, in violation of Section 2919.25(A) of the Ohio Revised Code." At his arraignment on November 20, 1998, appellant pled not guilty to the charge in the indictment. A jury trial was conducted on February 1, 1999. The following evidence was adduced at trial: Appellant and Tina Laigle, the victim, had been living together since January of 1997. They had a child together, John Allen King, Jr., who is approximately 18 months old. Tina is currently pregnant with their second child. Approximately two weeks prior to November 9, 1998, Tina and appellant separated. Although appellant had already moved from the apartment, he spent the night with Tina on October 30, 1998. Several days prior to November 9, 1998, appellant and Tina spoke on the telephone and appellant agreed to assist Tina with obtaining some diapers for their child. Additionally, appellant needed a birth certificate and Social Security card which remained at Tina's apartment. On November 9, 1998, appellant arrived at Tina's apartment unannounced to pick up his Social Security card and birth certificate. Tina told appellant that she would get it later and put it in the mail box for appellant to pick up. Appellant did not want to wait, and insisted that Tina get the papers for him then. Tina complied and went to get the papers while appellant visited with their child. After a short while, Tina returned and handed appellant his birth certificate but mistakenly gave appellant their son's Social Security card. This upset appellant and he became agitated. Appellant told Tina that she was a "fucking bitch" and a "cunt". Transcript of Proceedings at Page [hereinafter Tran.] 94. Appellant also told Tina to "give his shit back right now". Tran. at 94. Tina frantically began looking for appellant's Social Security card and was able to find it. Fearful that appellant might harm her, Tina did not want to hand the card to appellant so she tossed it to him. Tina then asked appellant if he intended to buy diapers for their child. Appellant replied, "[t]his is why I never fucking come over here because this is the shit I always get from you." Tran. at 96. As Tina went to move their child away from appellant, appellant struck Tina in the mouth with an open hand. Appellant then slapped Tina in her ear. Appellant grabbed Tina and attempted to pull her over the baby gate that was between the two of them. Tina was able to get away, after grabbing appellant's arm and slapping him in the face. Before appellant left the apartment, he threw Tina's kitten at her. A neighbor, Tina Lane, who lived in the downstairs apartment, witnessed some of the incident. The neighbor testified that she heard loud yelling coming from Tina's apartment and that she then heard a "thunk". Tran. at 21. The neighbor opened the door to see what was going on. When she did so, appellant was coming down the stairs with Tina following behind. Tina was crying and said, "Call 9-1-1, he hit me". Id. The neighbor asked appellant about the thunking noise she had heard earlier and appellant stated that he had tripped down the stairs. Appellant denied striking Tina. When the neighbor asked appellant why Tina was crying, appellant replied, "Well, whatever". Appellant then ran out of the building. The neighbor testified that she observed a red mark around Tina's ear and noticed scratches on Tina's wrist. After appellant left the building, Tina called 9-1-1 and the police came to the apartment. Tina was transported to the hospital by ambulance. The police officer who interviewed Tina testified that she suffered a swollen lip, redness in her ear area and scratch marks on her wrist. The police officer saw these injuries as well as took photographs of them. These photographs as well as medical records, were admitted into evidence at trial. Upon the State's initiations of questions regarding the prior domestic violence conviction, appellant stipulated to the prior conviction in Canton Municipal Court. Appellant did not testify or present any evidence in his defense. The jury convicted appellant of domestic violence as charged in the indictment. In a Judgment Entry, filed February 4, 1999, appellant was committed to the Lorain Correctional Institution in Grafton, Ohio, for a determinate term of ten months. It is from this conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE DEFENDANT/APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS WHEN OTHER ACTS EVIDENCE AND BAD CHARACTER EVIDENCE WAS INTRODUCED IN CONTRAVENTION OF EVIDENCE RULES 403 AND 404 AND R.C. 2945.59, THEREBY VIOLATING THE DEFENDANT/APPELLANT'S RIGHT TO A FAIR TRIAL.
ASSIGNMENT OF ERROR II
 THE DEFENDANT/APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS WHEN HEARSAY EVIDENCE WAS ADMITTED IN VIOLATION OF THE OHIO RULES OF EVIDENCE 801(D)(2)(a) AND 803(2), THEREBY VIOLATING THE DEFENDANT/APPELLANT'S RIGHT TO A FAIR TRIAL.
ASSIGNMENT OF ERROR III
 THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant, in his first assignment of error, argues that he was deprived of his right to a fair trial when other acts evidence and bad character evidence was introduced in contravention of Evid.R. 403 and 404 and R.C. 2945.59. Specifically, appellant contends that the trial court erred when it permitted the victim, Ms. Tina Laigle, to testify to the profane language used by appellant just before the domestic violence occurred. Appellant also contends that errors were committed when Ms. Laigle was asked about appellant's prior conviction for domestic violence and when Ms. Laigle was permitted to testify that she had a protection order against appellant. We disagree. The trial court is vested with discretion in determining the admissibility of evidence. Evid.R. 104. Any error in the admission of evidence must be analyzed under an abuse of discretion standard of review. "The terms `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Appellant cites this court to Evid.R. 402(A), 403(A), 404(A) and 404(B). Evidence Rule 402(A) provides for "admission of all relevant evidence and the exclusion of all non-relevant evidence." However, Evid.R. 403(A) provides the following: Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
Further, Evid.R. 404(A) generally provides for the exclusion of evidence as to a "person's character or a trait of his character for the purpose of proving that he acted in conformity therewith on a particular occasion". Evidence Rule 404(B) provides for the exclusion of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith." In this case, appellant argues that the precise, profane language, testified to by the victim, "only served to taint and inflame the jury and reflect on the character of the accused." In the case sub judice, the victim was permitted to testify, over appellant's objections, to the following:
 BY MS. DAVE: [Assistant Prosecuting Attorney] Q. Now, prior to giving him the wrong Social Security card how were you guys? How was your conversation?
 A. It was normal, just typical. It wasn't really — of course, it was more I was looking for stuff and he was interacting with the child.
Q. No one was angry at that point?
A. No. No one was angry at that point.
 Q. When you gave him the wrong Social Security card, did he become, start using profanity at you?
A. Yes, he did. He got very agitated.
Q. What profane language did he use?
MR. BOSKE: Objection, Your Honor.
THE COURT: Overruled.
THE WITNESS: Can I say that? Am I allowed to say it?
THE COURT: Yes.
 THE WITNESS: He called me a fucking bitch, a cunt. Told me To give him his shit back right now. . . .
Q. Did he use some language again, profane language again?
A. Yes, ma'am, he did.
Q. What did he say?
MR BOSKE: Objection.
THE COURT: Overruled.
 THE WITNESS: He said this is why I never fucking come over here Because this is shit that I was always get from you all the time."
Transcript of Proceedings at 94 — 96.
We find that State v. Johnson, (1994), 71 Ohio St.3d 332, cited by appellant is inapplicable to the case sub judice. In Johnson, the trial court permitted a police officer to testify that during an interview with police, the defendant continually referred to women as "whores" or "bitches." The State argued that this testimony indicated the defendant's hatred and contempt for women, tending to explain why defendant murdered his sister. However, the Ohio Supreme Court found that hatred of women was a character trait. Pursuant to Evid.R. 404(A), evidence of this character trait could not be used to prove that the defendant "acted in conformity therewith on a particular occasion." Therefore, defendant's hatred of women could not be used to prove the defendant killed the victim. In the case sub judice, we find appellant's profanity was not used to prove a character trait for which appellant acted in conformity, but rather it was presented as part of the victim's recounting of the crime and was probative as to appellant's motive and intent. See R.C. 2945.59 and Evid.R. 404(B). Further, we find that the probative value outweighed any danger that the profanity used by appellant was unfairly prejudicial, confused the issues or mislead the jury. See Evid.R. 403(A). Therefore, the trial court did not abuse its discretion in admitting the profanity used by appellant just prior to his hitting the victim. As to the issue of admission of the prior conviction, we find appellant's argument fails. In this case, the existence of a prior conviction was an element to the felony domestic violence charge appellant was facing. R.C. 2919.25(D) states that "[w]hoever violates this section is guilty of domestic violence . . . If the offender previously has been convicted of domestic violence . . . a violation of division (A) or (B) of this section is a felony of the fifth degree." "Where the existence of a prior offense is an element of a subsequent crime, the state must prove the prior conviction beyond a reasonable doubt, just as it must prove any other element. The [fact finder] must find that the previous conviction has been established in order to find the defendant guilty on the second offense." State v. Day (1994), 99 Ohio App.3d 514, 517,651 N.E.2d 52, 53. R.C. 2945.75(B) states "[w]henever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." Additional evidence, beyond a certified copy of a conviction, must be offered to prove appellant's prior conviction. See State v. Blonski (1997), 125 Ohio App.3d 103, 109,707 N.E.2d 1168. Appellant contends that because there was a stipulation between the State and defense counsel as to the prior conviction, it was error to permit the State to ask about the conviction. The first reference to the stipulation is found only after the State asked the victim if she was aware of a prior conviction. Appellant objected before the victim answered and, upon a side bar discussion, a stipulation was entered into by counsel. In support of his argument, appellant cites this court to the case of State v. Settles (May 13, 1999), Seneca App. No. 13-98-63, unreported, 1999 WL 378392. In that case, it was found to be error when, even though the domestic violence charge was relevant and necessary to establish the current charge of domestic violence, the State engaged in lengthy proof even though a certified copy of the conviction was entered as evidence. We do not find Settles determinative in this case. Here, as in Settles, the prior conviction was an element of the pending charge and therefore the State was required to present proof of the conviction. The record before us reflects that the stipulation was entered into only after the witness was asked if she was aware of appellant's prior conviction for domestic violence. At that point in the trial, the State was required to not only prove the conviction, but also prove appellant was the person convicted. The witness did not answer that question. Further, once the stipulation was entered into, there was no lengthy proof or series of questions regarding the conviction. The State had a requirement to prove appellant's prior conviction until the stipulation was entered into. We find no error under Evid.R. 403, 404 or R.C. 2945.59. Appellant further argues that it was error to allow the victim to testify that a protective order had been issued, as a result of the pending charges, which restrained the appellant from having any contact with the victim. Appellant again cites this court to Settles, supra. In Settles, the Third District Court of Appeals found that the fact that an ex-parte civil protection order had been granted did not make the defendant's guilt any more or less likely, however, it did imply to the jury that another court had already found the defendant guilty. The Settles court found the "effect of the admittance of the order is irrelevant and the effect is overly prejudicial." We find that the case sub judice can be distinguished from the facts of Settles upon many grounds. However, we find it determinative that the testimony complained of in the case sub judice was elicited by defense counsel on cross-examination:
 Mr. Boske: Q. You were not upset that day that John had moved out and left you and your child?
A. No.
Q. To live on your own?
A. No. It was the best thing that happened.
Q. It was the best thing?
A. Yes.
Q. Well, since that time has he been able to visit his son?
A. Not from my protective order, no.
Q. So he hasn't been, seen his son since that day?
A. He has not tried.
Q. Did you try to initiate any contact between you, he and his son?
A. I was told not to have any contact with Mr. King or his father.
Transcript of Proceedings at 105.
We need not determine whether the admittance of such evidence was error. We find that even if error was committed, it was invited error. Under the invited error doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced." State v. Bey (1999), 85 Ohio St.3d 487, 493,709 N.E.2d 484 (quoting Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph one of the syllabus). Further, even if we were to assume arguendo that the admittance of the testimony was error, which we decline to do, and was not invited error, the standard of review, since appellant made no attempt to object to the victim's response to his question, is plain error. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus, State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 197. We cannot say that but for this testimony, the outcome of the trial would have been different. The victim testified that appellant hit her in the mouth, slapped her on her ear, grabbed her by her hair and pulled her over a baby gate, causing the victim, who is pregnant with appellant's child, to bounce her stomach over the gate. The victim further testified that appellant threw the victim's seven week old kitten at the victim, resulting in scratches on the victim's arm and the eye of their 18-month old baby. Tran. at 92-98. Officer Douglas J. Zartman, of the Canton Police Department, testified that he observed that the victim had a slight reddish mark above her lip and scratches on her right hand. The Officer further testified that when the victim pulled her hair back, he saw some red areas around her right ear. Therefore, we find that even if it was error to admit testimony regarding the protective order, such error did not rise to plain error. Appellant's first assignment of error is overruled.
 II
In appellant's second assignment of error, appellant argues that he was denied a fair trial when hearsay was admitted in violation of Evid.R. 801(D)(2) and 803(2). We disagree. As discussed in assignment of error I, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of syllabus; State v. Finnerty (1989), 45 Ohio St.3d 104, 107. Absent an abuse of discretion, a ruling will not be disturbed upon appeal. An abuse of discretion connotes more than a mere error in law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. It implies an arbitrary, unreasonable or unconscionable attitude on the part of the trial court. Id. Specifically, appellant contends that the court erroneously allowed portions of the victim's testimony to be admitted under the statement against interest exception to hearsay, pursuant to Evid.R. 801(D)(2). Further, appellant contends that the admission of testimony of Tina Lane, a neighbor of the victim, who overheard a portion of the disturbance, was erroneously admitted under Evid.R. 803(2). We find the challenged testimony does not constitute hearsay as defined by Evid.R. 801. We will address each witness' testimony in turn. The appellant challenges the following portion of the victim's testimony:
 BY MS. DAVE: Q. Now, prior to giving him the wrong Social Security card how were you guys? How was your conversation?
 A. It was normal, just typical. It wasn't really — of course, it was more I was looking for stuff and he was interacting with the child.
Q. No one was angry at that point?
A. No. No one was angry at that point.
 Q. When you gave him the wrong Social Security card, did he become, start using profanity at you?
A. Yes, he did. He got very agitated.
Q. What profane language did he use?
MR. BOSKE: Objection, Your Honor.
THE COURT: Overruled.
THE WITNESS: Can I say that? Am I allowed to say it?
THE COURT: Yes.
 THE WITNESS: He called me a fucking bitch, a cunt. Told me to give him his shit back right now.
Transcript of Proceedings at 94.
"Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The victim's testimony that appellant called the witness a "fucking bitch" and a "cunt" was not presented to prove the matter asserted. The testimony was not presented to show the victim was a "fucking bitch" or a "cunt". Rather, these statements were offered to show appellant's motive and intent, as well as, the circumstances of the domestic violence. Therefore, the trial court did not error in admitting the challenged testimony. Appellant also challenges the following testimony presented by Tina Lane, a neighbor of the victim:
 BY MS. DAVE: Q. Specifically what do you recall saying to the Defendant?
A. To the Defendant?
 Q. After she had run down the stairs and said call the police, he just hit me, you observed her crying?
 A. He said that he tripped down the stairs and that he didn't hit her, and I said — All I said was, Well, John, why is she crying? And that was all I said. And he said, Well, whatever, and took off running out the door. I don't know exactly what happened.
Transcript of Proceedings at 124.
We find that the neighbor's recitation of what appellant stated to her was not hearsay. To the extent these statements may have served to incriminate the appellant, we find they are admissible under Evid.R. 801(D)(2). That rule provides that a statement of a party offered against that party is not hearsay. We therefore conclude that it was not error for the trial court to admit this testimony. Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, appellant contends that the evidence is insufficient to sustain the conviction and the verdict is against the manifest weight of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at the trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Company v. Foley Construction Company (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. An appellate court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993),66 Ohio St.3d 610, 614 N.E.2d 742. Appellant was charged with felony domestic violence, in violation of R.C. 2919.25. R.C.2919.25 provides: (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member. . . . (D) Whoever violates this section is guilty of domestic violence. . . . If the offender previously has been convicted of domestic violence, of a violation of a municipal ordinance that is substantially similar to domestic violence, of a violation of section 2903.11, 2903.12, 2903.13, 2903.14, 2903.21, 2903.21.1,2903.22, 2911.21.1, or 2919.22 of the Revised Code involving a person who was a family or household member at the time of the violation, or of a violation of a municipal ordinance that is substantially similar to one of those sections involving a person who was a family or household member at the time of the violation, a violation of division (A) or (B) of this section is a felony of the fifth degree. . . . (E) As used in this section. . . . (1) "Family or household member" means any of the following: (a) Any of the following who is residing or has resided with the offender: (I) A spouse, a person living as a spouse, or a former spouse of the offender;. . . . (b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent. (2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question. We have reviewed the record and find the following facts substantiate the trial court's decision. Tina Laigle testified that, on November 9, 1998, appellant became upset and agitated with Tina when appellant arrived at Tina's apartment to pick up his social security card and birth certificate. Appellant became verbally abusive. Tina testified that appellant struck her in the mouth with an open hand and slapped her in the ear. Appellant then grabbed Tina and attempted to pull her over a baby gate that stood between them. This caused Tina's stomach to bounce on the baby gate. Appellant then became free of appellant but, before appellant left Tina's apartment building, appellant threw Tina's kitten at her, striking appellant and their 18 month old child. Tran. 83-104. A neighbor, Tina Lane, heard loud yelling. Upon opening her door to ask appellant and Tina to keep the noise down, the neighbor saw appellant on the stairs, just outside of Tina's apartment. The neighbor closed her door, but after the neighbor heard a "thunk", she opened her door to see what was going on. The neighbor testified that she saw appellant coming down the stairs with Tina following behind. Tina was crying and said "Call 9-1-1, he hit me." Police were called to the scene. Officer Zartman, of the Canton Police Department testified that appellant had a swollen lip, redness in her ear and scratch marks on her wrist. Tran. 117-127. The Officer testified that he saw these injuries. The victim's injuries were also observed by the neighbor. The neighbor testified that she observed a red mark around Tina's ear and scratches on Tina's wrist. Tran. at 125. The parties stipulated to appellant's prior conviction for domestic violence. Tran. at 103. Testimony further showed that appellant and Tina Laigle, the victim, had lived together recently and that appellant was the father of the victim's 18 month old child and the victim's unborn child. Based on the foregoing facts, the jury could find that appellant knowingly caused or attempted to cause physical harm to a family or household member as defined by statute, and that appellant had a prior conviction for domestic violence. We find appellant's conviction for felony domestic violence in the case sub judice was based on sufficient evidence to support the convictions and is supported by competent, credible evidence. Therefore, we find that appellant's conviction is not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
The Judgment of the Stark County Court of Common Pleas is affirmed.
GWIN, P.J. and HOFFMAN, J. CONCUR.