DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Kirk J. Louis, appeals his conviction in the Summit County Court of Common Pleas. We affirm.
 I.
On January 12, 2000, Detective Gilbride of the City of Akron Police department and other members of the fugitive task force sought to arrest Mr. Louis on an outstanding warrant. They found Mr. Louis at a residence in North Akron and proceeded to follow him when he left the residence by automobile. When Detective Gilbride attempted to pull Mr. Louis' vehicle over, Mr. Louis accelerated away. The first officers to pursue Mr. Louis were Detective Gilbride and Agent Doherty of the Federal Bureau of Investigation, each traveling in a Pontiac Grand Prix that was unmarked aside from the lights and siren mounted under the grill.
Other officers joined the pursuit as it wound through the streets of Akron and several adjoining communities. Although it was mid-afternoon, Mr. Louis proceeded through the traffic at high speed, failing to slow even in a school zone. During the pursuit, several marked police vehicles joined in the chase. At one point, an officer pursuing in a marked vehicle mistook Agent Doherty's unmarked vehicle for that of the fleeing suspect, and hence, mistakenly pulled over the Agent. The high-speed chase ended when Mr. Louis was boxed in by various police vehicles in the parking lot of the Eat'n Park restaurant in Chapel Hill Mall. By the time Mr. Louis finally stopped his vehicle, as many as six marked police vehicles had joined in the pursuit.
After stopping his vehicle, Mr. Louis was ordered out of his car by Officer King of the Akron Police Department. Officer King then inspected the interior of the vehicle that Mr. Louis had been driving. A bag of white powder, later identified as cocaine, was found lying upon the driver's seat of the vehicle.
Mr. Louis was arrested and, on January 20, 2000, was indicted by the Summit County Grand Jury on six counts. Four counts stemmed from incidents which occurred in November 1999: (1) felonious assault, in violation of R.C. 2903.11(A)(1); (2) aggravated burglary, in violation of R.C. 2911.11(A)(1); (3) assault, in violation of R.C. 2903.13(A); and (4) domestic violence, in violation of R.C. 2919.25(A). The two remaining counts stemmed from his January 12, 2000 flight and arrest: (1) failing to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B); and (2) possession of cocaine, in violation of R.C.2925.11(A).
On March 20, 2000, Mr. Louis came for trial. During the testimony of Officer King, the Officer stated that before she joined the pursuit Detective Gilbride stated over the radio that "he was chasing a parole violator for murder[.]" Upon timely motion by Mr. Louis' counsel, a mistrial was declared. A second jury trial was held April 17 through 19, 2000. Mr. Louis was found not guilty of the counts stemming from the incidents which occurred in November 1999, but guilty of the counts stemming from the chase and arrest. He was sentenced accordingly. This appeal followed.
 II.
Mr. Louis asserts seven assignments of error. We will address his assignments of error in turn, consolidating his fifth and sixth assignments of error to facilitate review.
 A. First Assignment of Error The Trial Court committed error in denying Mr. Louis' request to dismiss the prosecution against him based on the grounds of double jeopardy due to mistrial caused by prosecutorial misconduct during the April 17, 2000 trial.
Mr. Louis asserts that the mistrial granted in the March 20, 2000 trial was due to prosecutorial misconduct, and therefore, principles of double jeopardy prohibited Mr. Louis' retrial in April 2000. We disagree.
Generally, the granting of a mistrial upon a defendant's motion for mistrial does not implicate double jeopardy concerns with regard to retrial. State v. Loza (1994), 71 Ohio St.3d 61, 70. Moreover,
 [p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[the] important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.
(Citations omitted.) Oregon v. Kennedy (1982), 456 U.S. 667, 676,72 L.Ed.2d 416, 424-25.
Mr. Louis asserts that the following exchange at his first trial constituted prosecutorial misconduct:
 Q. [Prosecutor] Do you remember hearing about a chase in progress about 2:30 in the afternoon?
A. [Officer King] Yes, sir.
Q. Were you driving that day?
A. Yes, sir.
 Q. Can you tell us what you and Officer Hensley did when you hear [sic] that?
 A. We were just ending a call on Broad and McNaughton when Detective Gilbride called out for a signal five, which means hold the channel, a chase in effect, and he was chasing a parole violator for murder and —
At that point, upon defendant's objection and motion for mistrial, the trial court declared a mistrial.
Upon review of this record, we can find no prosecutorial misconduct. The prosecutor asked Officer King what she and her partner did when they heard about the pursuit of Mr. Louis from Detective Gilbride. The prosecutor did not ask what Detective Gilbride said or why Mr. Louis was being pursued. The answer elicited was not the answer called for in the question. Hence, we can find no intent on the part of the prosecutor to elicit prejudicial, improper testimony to goad the defendant into seeking a mistrial. Accordingly, we cannot conclude that Mr. Louis' retrial was barred on double jeopardy grounds due to prosecutorial misconduct. Mr. Louis' first assignment of error is overruled.
 B. Second Assignment of Error The Trial Court erred in denying Defendant's motion for a mistrial on the basis of prejudice arising from the prosecutor's incorrect statement in opening argument that Mr. Louis had been previously convicted of domestic violence.
Mr. Louis avers that the prosecutor incorrectly referred to a past conviction for domestic violence of which, in fact, Mr. Louis had been acquitted. Hence, he avers that the trial court erred in not granting a mistrial based on the prosecutor's statement. We disagree.
Due to the variety of circumstances in which a mistrial may emerge, great deference must be given by a reviewing court to the trial court's discretion as the trial court judge is in the best position to assess the situation and determine whether a mistrial is appropriate. State v.Glover (1988), 35 Ohio St.3d 18, 19. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. Moreover, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Mr. Louis was charged with domestic violence, in violation of R.C.2919.25(A) with a specification of having been convicted of domestic violence or other applicable crime in the past. While normally a violation of R.C. 2919.25(A) is a misdemeanor in the first degree, "[i]f the offender previously has been convicted of domestic violence, * * * [it] is a felony of the fifth degree." R.C. 2919.25(D). Hence, the existence of a prior crime of domestic violence was an element of the crime charged and it was, therefore, incumbent upon the State to establish that prior crime by evidence beyond a reasonable doubt. Statev. Blonski (1997), 125 Ohio App.3d 103, 108-9.
In his opening argument, the prosecutor stated that Mr. Louis had been previously convicted of domestic violence. However, that statement was incorrect. Mr. Louis moved for a mistrial. The trial court denied the motion and, as the State could not prove Mr. Louis' prior conviction, in due course the jury acquitted him on that count. Further, the trial court instructed the jury that
 [t]he evidence, as I have said, does not include the indictment. It does not include the answers to questions you were instructed to disregard, or opening or closing statements of counsel. The opening statements and closing arguments of counsel are designed to assist you, but they are not evidence.
"A jury is presumed to follow the instructions given to it by the trial judge." State v. Stallings (2000), 89 Ohio St.3d 280, 286.
Based on the facts in this case, we cannot conclude that the trial court abused its discretion in denying Mr. Louis' motion for mistrial. The jury was instructed that the prosecutor's statement was not evidence. Further, no prejudice is apparent from the statement as Mr. Louis was acquitted of the charge it relates to and all the other charges factually related to the charge of domestic violence. Hence, we cannot conclude that that trial court abused its discretion, and accordingly, overrule Mr. Louis' second assignment of error.
 C. Third Assignment of Error The prosecutor's conduct in opening statement arguing that Defendant had been previously convicted of domestic violence when Defendant had never been convicted of domestic violence is misconduct which prejudiced the Defendant and Defendant's conviction should be reversed.
Mr. Louis avers that, in his opening argument, the prosecutor committed prosecutorial misconduct by referring to Mr. Louis' non-existent prior domestic violence conviction. Further, he asserts that he was denied a fair trial by the prosecutor's misconduct. We disagree.
In reviewing allegations of prosecutorial misconduct, this court must bear in mind that the "`touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hill (1996), 75 Ohio St.3d 195,203, quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 71 L.Ed.2d 78,87. Prosecutorial misconduct will not serve as grounds for reversal unless the defendant was denied a fair trial. State v. Maurer (1984),15 Ohio St.3d 239, 266. The defendant must prove that the prosecutor's comments were improper and that they prejudicially affected his or her substantial rights. State v. Smith (1984), 14 Ohio St.3d 13, 14.
Mr. Louis asserts that because the prosecutor made a statement in his opening argument, which was not supported by the evidence adduced at trial, the prosecutor is guilty of misconduct. In the prosecutor's opening statement, he referred to a prior conviction for domestic violence that was an element of one the crimes with which defendant was charged. However, as the prosecutor's statement was false, no evidence was adduced to prove this element at trial, and accordingly, Mr. Louis was acquitted of that charge. We cannot conclude that this represents prosecutorial misconduct. Further, upon review of the record herein, the trial court's instruction on closing and opening arguments, and considering Mr. Louis' acquittal on the charge that the statement was made in regard to, we conclude that Mr. Louis received a fair trial. Mr. Louis's third assignment of error is overruled.
 D. Fourth Assignment of Error Mr. Louis was denied the effective assistance of counsel and his conviction was in violation of his Sixth Amendment right to counsel.
Mr. Louis avers that his counsel was so deficient that he was no longer acting as the counsel envisaged in the constitution. He avers that his counsel failed to call any witnesses or make any closing argument regarding the charges on which Mr. Louis was convicted. Further, he avers that his counsel was ineffective in failing to cross-examine Officer King, the only witness to testify regarding the discovery of cocaine in the vehicle Mr. Louis was driving. We disagree.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174.
Initially, we note that Mr. Louis does not assert that his counsel was ineffective with regard to the four charges of which Mr. Louis was acquitted. In fact, he states that "counsel provided more than adequate assistance * * * regarding the four counts upon which [he] was acquitted." He asserts solely that his counsel was deficient in regard to the two charges on which he was convicted because counsel failed to call witnesses regarding those charges, failed to address those charges in closing argument, and failed to cross-examine Officer King.
This court has previously held that "[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics."State v. Miller (1988), 43 Ohio App.3d 44, 45. Moreover, we are not in a position to second-guess defense counsel's tactical decisions or what knowledge Mr. Louis may have provided to his counsel concerning the two charges at issue here. See, generally, State v. Cornwell (1999),86 Ohio St.3d 560, 569. Mr. Louis' counsel did call several witnesses in Mr. Louis' defense. Moreover, Mr. Louis did not present any evidence as to "whether such [additional] witnesses were available or what pertinent facts might have been garnered by such action." In re Wise
(1994), 96 Ohio App.3d 619, 628. Mr. Louis' trial counsel also cross-examined the officers involved in the chase of Mr. Louis regarding the confusion caused by the unmarked police vehicles. He cross-examined Officer Lambert, the officer who pulled over Agent Doherty, regarding the difficulty in determining that the unmarked police vehicles were police vehicles. Hence, we cannot conclude that Mr. Louis's counsel was deficient in failing to call witnesses at trial regarding the two counts of which Mr. Louis was convicted.
Mr. Louis next avers that his trial counsel was deficient in failing to make arguments regarding the two charges on which Mr. Louis was convicted in his closing argument. However, this appears to have been sound trial strategy in that counsel concentrated on the charges that were weakest and obtained acquittals on those charges. Further, the two remaining charges presented little fodder for argument, Mr. Louis continued to flee even after marked police vehicles joined the pursuit and the unmarked police vehicles had lights behind their grillwork, making them somewhat more easy to identify from the front. Further, the cocaine was found in the driver's seat of the vehicle that Mr. Louis had just vacated. Hence, we conclude that counsel engaged in sound trial strategy and was not deficient in regard to his closing argument.
Lastly, Mr. Louis asserts that his counsel failed to cross-examine Officer King. However, we conclude that this represented sound trial strategy in that Officer King's testimony was extremely damaging. Moreover, we are not in a position to surmise that Officer King could have been cross-examined in a manner helpful to the defense. As we noted above, we cannot know what information Mr. Louis' counsel was privy to regarding the cocaine. Accordingly, we conclude that Mr. Louis' counsel was not so deficient as to cease being the counsel envisaged in the constitution. Mr. Louis' fourth assignment of error is overruled.
 E. Fifth Assignment of Error The jury's verdict was against the manifest weight of the evidence.
 Sixth Assignment of Error The jury's verdict finding the defendant guilty of the charge of possession of cocaine is not supported by sufficient evidence.
Mr. Louis asserts that his convictions of possession of cocaine and failure to obey the order of a police officer were against the manifest weight of the evidence. He argues that the jury clearly lost its way and perpetrated such a manifest miscarriage of justice that his convictions must be reversed and a new trial ordered. Further, he argues that his conviction for possession of cocaine was not supported by sufficient evidence because the State failed to show that the baggie found on the driver's seat of the vehicle in which he was arrested contained cocaine. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. However, "[t]he test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Leggett (Oct. 29, 1997), Summit App. No. 18303, unreported, at 3-4. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. at 4. "In essence, sufficiency is a test of adequacy."State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
One is guilty of failing to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B), if one "operate[s] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring [one's] motor vehicle to a stop." Such a violation of R.C. 2921.331(B) is a felony of the third degree if the jury finds by proof beyond a reasonable doubt that "[t]he operation of the motor vehicle by the offender caused substantial risk of serious physical harm to persons or property." R.C.2921.331(C)(5)(a)(ii).
To be found guilty of possession of drugs, specifically cocaine, the State must prove that one "knowingly obtain[ed], possess[ed], or use[d] a controlled substance * * * [and] [i]f the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever [knowingly obtain[ed], possess[ed], or use[d] [the] controlled substance] is guilty of possession of cocaine." R.C.2925.11(A),(C)(4). Cocaine is defined as a Schedule II controlled substance. R.C. 3719.41(SCHEDULE II)(A)(4).
We will first address Mr. Louis' contention that his conviction for failing to obey a police officer's order to stop was against the manifest weight of the evidence. Although the evidence showed that Mr. Louis was first pursued by only unmarked police vehicles, marked police vehicles soon joined in the pursuit and yet Mr. Louis failed to promptly stop his motor vehicle. Further, the unmarked police vehicles had engaged their sirens, their flashing headlights, and the red and blue lights mounted behind their front grills. Mr. Louis also drove at excessive speed through mid-afternoon traffic in the City of Akron, drove through a school zone at excessive speed while it was manned by school crossing guards, and failed to obey numerous traffic signals. Accordingly, upon thorough review of the record herein, we conclude that his conviction for failing to obey the order or signal of a police officer and willfully fleeing that thereby caused a substantial risk of serious physical harm to persons or property is not against the manifest weight of the evidence.
Mr. Louis also asserts that his conviction for possession of cocaine was against the manifest weight of the evidence and not supported by sufficient evidence. Officer King testified that she found a small plastic bag on the driver's seat of the vehicle that Mr. Louis had driven during the chase. She found the bag immediately after Mr. Louis exited the vehicle and was placed under arrest. Mr. Louis argues that there was no evidence presented that the bag contained cocaine, but a chemical analysis report on the contents of the bag, which was stipulated to by Mr. Louis' counsel, was admitted without objection by the State at trial. The chemical analysis report found the contents of the bag to be cocaine. Hence, upon thorough review of the record, we cannot find that the State adduced insufficient evidence at trial regarding whether the bag contained cocaine or that Mr. Louis' conviction on this charge was against the manifest weight of the evidence. Mr. Louis' fifth and sixth assignments of error are overruled.
 F. Seventh Assignment of Error The Trial Court erred in amending the charge of failure to comply with the signal of a police officer to a felony of the third degree when the charge had initially [been] indicted as a misdemeanor of the first degree.
 Mr. Louis asserts that trial court erred in allowing the State to amendthe indictment pursuant to Crim.R. 7(D) in regard to the charge offailing to obey the order or signal of a police officer. He avers thatthe indictment specified a misdemeanor while, for that offense to rise tothe level of a felony, one must be found guilty of the additional elementof causing a substantial risk of serious physical harm to persons orproperty. Hence, he avers that the trial court erred in allowing theamendment because it added an additional element to the crime chargedand, in essence, changed the identity of the crime charged. Wedisagree.
 As noted above, one is guilty of failing to comply with the order orsignal of a police officer, in violation of R.C. 2921.331(B), if one"operate[s] a motor vehicle so as willfully to elude or flee a policeofficer after receiving a visible or audible signal from a police officerto bring [one's] motor vehicle to a stop." Such a violation of R.C.2921.331(B) is a felony of the third degree if the jury finds by proofbeyond a reasonable doubt that "[t]he operation of the motor vehicle bythe offender caused substantial risk of serious physical harm to personsor property." R.C. 2921.331(C)(5)(a)(ii).
 R.C. 2945.75(A)(1) provides that,
 [w]hen the presence of one or more additional elements makes an offense one of more serious degree[,] [t]he affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
Moreover, by way of example, "Section 2945.75 requires the complaint to state that the accused's crime is a 4th degree felony or, alternatively, to allege that the accused has a prior theft offense conviction." (Emphasis added.) 1974 Committee Comment to Am.Sub.H.B. No. 511, R.C.2945.75. Further, "[t]he statement [in the indictment] may be made in ordinary and concise language without technical averments or allegations not essential to be proved." Crim.R. 7(B).
In the instant case, the indictment read, in pertinent part:
 KIRK J. LOUIS aka MAX LOUIS aka JULIAN CANTY aka KIRK CANTY aka CURT LOUIS aka MARK LOUIS on or about the 12th day of January, 2000, in the County of Summit aforesaid, did commit the crime of FAILURE TO COMPLY WITH ORDER OR SIGNAL OF POLICE OFFICER in that he did operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop and the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property, in violation of Section 2921.331(B) of the Ohio Revised Code, A FELONY OF THE FOURTH DEGREE, contrary to the form of the statute in such case made and provided against the peace and dignity of the State of Ohio.
(Emphasis original.)
Upon review of the indictment, it did not charge a misdemeanor as Mr. Louis contends, but rather, stated the crime to be a felony of the fourth degree. However, upon motion by the prosecution, the trial court amended the charge to be a felony of the third degree. The State avers in its brief that the incorrect degree of the felony charged was a typographical error due to a recent change in the law which made the offense a third degree felony rather than a fourth degree felony.
Mr. Louis asserts that he was prejudiced by the correction of the typographical error because it improperly added an additional element to the offense charged. However, we conclude that no such additional element was added because the indictment specified the element which enhances the crime charged to a third degree felony, namely "the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." Moreover, the indictment complied with both Crim.R. 7(B), as it provided Mr. Louis with notice of all the elements of the crime charged, and with R.C.2945.75(A)(1), as it recites the penalty enhancing element. Hence, we cannot conclude that the trial court erred in allowing the State to amend the indictment pursuant to Crim.R. 7(D) or that the amendment changed the identity of the crime charged, or that the original indictment did not specify the elements of the crime charged. Accordingly, Mr. Louis' seventh assignment for error is overruled.
 III.
Mr. Louis' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
___________________________ WILLIAM G. BATCHELDER
WHITMORE, J., REECE, J., CONCUR.
(Reece, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)