This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Erin Cureton has appealed from a decision of the Medina County Court of Common Pleas that found him guilty of one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony in the second degree. This Court affirms.
 I
{¶ 2} Appellant and his wife, Debra ("the victim"), agree that on October 10, 1999, they were arguing heatedly while driving from a bar to the home of Appellant's parents. Before reaching their destination, the victim suffered serious damage to her right eye, cheekbone, and jawbone. At trial, however, they testified to different explanations for these injuries.
{¶ 3} The victim testified that Appellant punched or elbowed her in the right side of her face. Appellant, on the other hand, claimed that he was innocent of any wrongdoing. He testified that the victim lost control of the car and hit her head on the steering wheel when the car went off the road into a ditch. Although the parties' testimony conflicted on the actual source of the injuries, both parties further testified that the victim required medical attention.
{¶ 4} The victim did not immediately seek medical aid, but instead drove ten minutes to the home of Appellant's parents while Appellant sat in the passenger seat helping the victim steer and shift gears. Once there, Appellant ran inside his parents' home to get the victim a towel and ice. He attempted to administer aid to the victim in his parents' driveway, but he later took her inside their house. Appellant was unable to stop the bleeding, and after spending approximately five minutes at his parents' home, he decided to drive the victim to the hospital.
{¶ 5} On the way to the hospital, Appellant begged the victim to lie to the hospital staff and tell them that she injured herself in a car accident. She was persuaded to offer the fictitious story because, at the time, she was in such pain that "[she] didn't want to say anything, [she] just wanted her head fixed. [She] didn't even want to deal with it[.]" The victim continued to lie, even after she was released from the hospital, because Appellant told her that her father would go to the police if he knew that Appellant was the cause of her injuries. The victim believed that if that happened, a court would determine that she was an unfit mother and take her child away; this belief was reinforced by Appellant's assurance that such a result would occur if she told the police that Appellant caused her injuries.
{¶ 6} Although the victim waited almost a year before telling the police about her husband's assault, she waited less than a week after the accident before telling a close friend, Chad Daubert, about the attack. The victim later told her brother and two other friends about the facts surrounding the incident. In November of 1999, she eventually told Appellant's parents that she was never in a car accident and that Appellant was the cause of her injuries. The victim finally told the police that her husband assaulted her on June 7 or 8 of 2000.
{¶ 7} Appellant was indicted on one count of felonious assault, and was found guilty by a jury as charged in the indictment. The trial court sentenced Appellant to a term of four years in prison. Appellant has timely appealed, asserting five assignments of error. We have rearranged and consolidated Appellant's assignments of error to facilitate review.
 II Assignment of Error Number One {¶ 8} "APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."
 Assignment of Error Number Five {¶ 9} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 10} In his first assignment of error, Appellant has contended that there was insufficient evidence to prove he acted "knowingly." In his fifth assignment of error, he has also argued that the jury's finding that he acted "knowingly" was against the manifest weight of the evidence. This Court disagrees.
{¶ 11} As an initial matter, this Court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. Statev. Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. Manges, supra, at ¶ 24. In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
 {¶ 12} "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
{¶ 13} Appellant was convicted of violating R.C. 2903.11(A)(1), which provides that no person shall knowingly cause serious physical harm to another.
{¶ 14} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
{¶ 15} To determine whether Appellant acted "knowingly," his state of mind must be determined from the totality of circumstances surrounding the alleged crime. State v. Dorsey (Feb. 13, 1991), 9th Dist. No. 90CA004796, at 3.
{¶ 16} Appellant has contended that, assuming the jury chose to believe that he hit his wife over his claim of innocence, the evidence does not establish that he did so "knowingly." Appellant has further argued that he "had no awareness of the probability of causing serious physical harm by his alleged actions" and that he acted in a fit of "blind rage," i.e., in the lesser mental state of recklessness or negligence. To support this assertion, Appellant has pointed to the victim's testimony, in which she stated: "Every time [Appellant] looked at my eye, he just couldn't believe that that was the result. Like he was shocked at the result of my face." Thus, Appellant has suggested that he was in a state of shock and disbelief when he saw the extent of the damage to the victim's face. He has contended that such a mental state precludes a jury finding that he "knowingly" struck the victim.
{¶ 17} This Court disagrees. Assuming arguendo that Appellant was unaware of the potential for the specific injury inflicted, the totality of the circumstances supports a jury finding that Appellant was aware that by striking his wife in the face he would cause serious physical harm to her person.
{¶ 18} The victim testified that before Appellant punched her, they were involved in what she described as a "heated argument." The victim further testified that she heard Appellant yell "shut up" before hitting her and, after the incident, Appellant told her "he was simply trying to cover [her] mouth and went too far over." Dr. Richard Pazol, the victim's psychologist, also testified that the victim told him that Appellant would "grab [the victim's] face when she was talking * * * reportedly that she was talking too much so [Appellant] would grab and twist [the victim's] face to `shut her up.'" A reasonable jury could find from such testimony that Appellant intended to "shut the victim up," and therefore acted knowingly.
{¶ 19} Although it appears from the record that October 10, 1999, is the first time Appellant ever seriously injured the victim, it is equally as clear from the record that the violence in the relationship escalated from verbal abuse and attempts to strangle the victim, to the use of extreme force. Therefore, on the record as a whole, we cannot conclude that the jury clearly lost its way when it convicted Appellant of felonious assault.
{¶ 20} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis sic.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
{¶ 21} Consequently, we need not further address Appellant's assertion that there was insufficient evidence to prove an essential element of felonious assault. Accordingly, Appellant's first and fifth assignments of error without merit.
 Assignment of Error Number Two {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FAILING TO INSTRUCT THE JURY ON THE INFERIOR DEGREE OFFENSE OF AGGRAVATED ASSAULT, AND THE LESSER INCLUDED OFFENSE OF DOMESTIC VIOLENCE."
{¶ 23} In Appellant's second assignment of error, he has asserted that the trial court should have instructed the jury on the inferior degree offense of aggravated assault because there was sufficient evidence of serious provocation. He has further argued that a jury instruction for the lesser included offense of domestic violence should also have been given because the victim was his wife, a family member.[1]
{¶ 24} Appellant, however, has admitted that his trial counsel did not request a jury instruction on either the inferior offense of aggravated assault or the lesser included offense of domestic violence. He has further conceded that failure to request an instruction on an inferior or lesser included offense waives any claim of error absent plain error. See State v. Parra (1980), 61 Ohio St.2d 236, paragraph one of the syllabus; see, also, State v. Campbell (July 14, 1999), 9th Dist. No. 97CA006973, at 15.
{¶ 25} Appellant is correct in his concession. "Where a defendant has not objected to the lack of a jury instruction * * * [an appellate court] must determine if the lack of such an instruction constitutes plain error." State v. Westfall (Oct. 4, 2000), 9th Dist. No. 19599, at 8, citing State v. Durkin (1981), 66 Ohio St.2d 158, 161. Plain error is defined as "error but for the occurrence of which it can be said that the outcome of the trial would have clearly been otherwise." State v.Sanders (May 17, 2000), 9th Dist. No. 19783, at 3. The Ohio Supreme Court has recognized that the plain error doctrine should be applied sparingly, and only when necessary to prevent a clear miscarriage of justice. Id., citing State v. Wolery (1976), 46 Ohio St.2d 316, 327.
{¶ 26} In the present case, the trial court's failure to give jury instructions cannot constitute plain error. Appellant's trial counsel chose to present evidence that, if believed, would prove that Appellant was wholly innocent of the crime charged. A request for a jury instruction on a lesser included or inferior degree offense would have been inconsistent with Appellant's claim that he was innocent. As such, trial counsel's decision not to request jury instructions for aggravated assault and domestic violence, and Appellant's subsequent conviction, does not amount to a manifest miscarriage of justice. Accordingly, Appellant's second assignment of error is not well taken.
 Assignment of Error Number Four {¶ 27} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION WHEN IT ALLOWED OVER APPELLANT'S OBJECTIONS INADMISSIBLE EVIDENCE OF APPELLANT'S CHARACTER AND OTHER WRONGFUL ACTS."
{¶ 28} In Appellant's fourth assignment of error, he has contended that the trial court abused its discretion when it allowed the prosecution to call two rebuttal witnesses and to cross-examine Appellant concerning: wedding announcements that referred to Appellant as an attorney, his failure to take the bar examination, lies Appellant allegedly made on the application to take the bar, a sexual harassment claim Appellant brought against his former employer, his past dealings with local attorneys, and the disposition of a disciplinary hearing he had before the Ohio Bar Disciplinary Committee.
{¶ 29} A trial court has broad discretion in the admission of evidence and this Court will not overturn a decision absent an abuse of discretion and a showing that Appellant suffered a material prejudice.State v. Martin (1985), 19 Ohio St.3d 122, 129; see, also State v.Heinish (1990), 50 Ohio St.3d 231, 234. An abuse of discretion entails more than an error in judgment; it also connotes an attitude on the part of the trial court that is unreasonable, unconscionable or arbitrary.State v. Lessin (1993), 67 Ohio St.3d 487, 494. "When applying the abuse of discretion standard of review, a reviewing court is not free to merely substitute its judgment for that of the trial court." In re Jane Doe I
(1991), 57 Ohio St.3d 135, 138. Thus, this Court may only overturn a trial court's ruling on the admissibility of evidence if that ruling was unreasonable, arbitrary, or unconscionable. Calderon v. Sharkey (1982),70 Ohio St.2d 218, 219-220.
{¶ 30} The state has argued that by claiming Appellant was an attorney during opening statement, trial counsel "opened the door" to examination of Appellant on objectionable matters and to the testimony of rebuttal witnesses, Mr.Kevin Dunn and Mr. Brian Hare.[2] The state has also claimed that such evidence was properly admitted under Evid.R. 608(B). Appellant, on the other hand, has argued that the claim made by trial counsel during opening statement was not evidence. Appellant has further contended that because there was no actual evidence before the jury of any claim by Appellant that he was an attorney, and no motion by the prosecutor for such a ruling, "there was no justifiable or reasonable basis for the trial court to sua sponte raise any question as to Appellant's credibility[.]"
{¶ 31} Statements made during opening or closing statements are not evidence. See State v. Frazier (1995), 73 Ohio St.3d 323, 338. This Court has also previously held that an opposing party may not introduce character evidence that is otherwise inadmissible to counter any remarks made by counsel during opening statement. See State v. Bronner, 9th Dist. No. 20753, 2002-Ohio-4248, ¶ 57. Thus, Appellant's trial counsel did not "open the door" to an attack on Appellant's credibility. Nevertheless, the questions the prosecution posed to Appellant during cross-examination were properly admitted under Evid.R. 608(B).
{¶ 32} Evid.R. 608(B) gives the court discretion to allow cross-examination of a witness for impeachment purposes regarding specific instances of conduct if clearly probative of the witness' veracity. Evid.R. 608(B) states, in pertinent part:
 {¶ 33} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness * * * may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness[.]"
{¶ 34} Additionally, Evid.R. 611(B) provides: "Cross-examination shall be permitted on all relevant matters and matters affecting credibility."
{¶ 35} In the case sub judice, the trial court held a discussion in chambers to determine whether the prosecution could cross-examine Appellant on any facts relating to trial counsel's claim that Appellant was an attorney. The trial court permitted the prosecution's cross-examination of Appellant on such matters, stating "credibility is always an issue." Therefore, the prosecution's cross-examination of Appellant was proper under Evid.R. 608(B). The prosecution could question Appellant about specific instances of conduct that demonstrated his character for untruthfulness. See, e.g., State v. Kamel (1984),12 Ohio St.3d 306, 310-311.
{¶ 36} Although the prosecution properly cross-examined Appellant on specific instances of conduct, the testimony presented by the prosecution's rebuttal witnesses, Mr. Dunn and Mr. Hare, was inadmissible. The state called the rebuttal witnesses for the sole purpose of impeaching Appellant's testimony on cross-examination. This was improper for the reason that the rebuttal witnesses' testimony was a form of extrinsic evidence. Under Evid.R. 608(B), the prosecution could not legitimately impeach Appellant's testimony with such evidence. The prosecution was limited to the answers elicited from Appellant on cross-examination. See State v. Gott (Dec. 22, 1993), 9th Dist. No. 93CA005560, at 9.
{¶ 37} This Court concludes that although the trial court improperly admitted the rebuttal witnesses' testimony, such error was harmless error. Crim.R. 52(A) defines harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" A reviewing court, when determining whether an error in the admission of evidence is harmless, must find there is no reasonable probability that the evidence may have contributed to the defendant's conviction. State v. DeMarco (1987), 31 Ohio St.3d 191, 195; see, also,State v. Brown (1992), 65 Ohio St.3d 483, 485. After reviewing the record as a whole, this Court is convinced that the inadmissible rebuttal testimony did not contribute to Appellant's conviction.
{¶ 38} It is worth noting that on cross-examination, Appellant essentially testified to the same matters as the prosecution's rebuttal witnesses. The only new matter that was potentially damaging to Appellant was Mr. Dunn's testimony regarding Appellant's 1998 conviction for disorderly conduct. Other admissible evidence adduced at trial outweighed this testimony, however.[3] The victim testified to a history of mental and physical abuse she suffered at the hands of Appellant and gave a detailed description of the events that took place in the early morning of October 10, 1999. Dr. Pazol also provided the jury with testimony regarding prior instances of Appellant's physical abuse. In addition, Appellant's own father, Frank Cureton, testified that Appellant admitted hitting his wife. In light of all the foregoing evidence, there is no reasonable probability that the testimony regarding Appellant's 1998 conviction for disorderly conduct contributed to his conviction in the instant case.
{¶ 39} Appellant's fourth assignment of error is without merit
 Assignment of Error Number Three {¶ 40} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL."
{¶ 41} In Appellant's third assignment of error, he has asserted that he was denied the effective assistance of counsel. We disagree.
{¶ 42} Appellant bears the burden of proof in a claim of ineffective assistance of counsel. State v. Colon, 9th Dist. No, 20949, 2002-Ohio-3985, at ¶ 49. In order to establish the existence of such a claim, Appellant must satisfy a two-pronged test. First, Appellant must demonstrate that trial counsel's performance was deficient by showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed Appellant by the Sixth Amendment. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
{¶ 43} Second, Appellant must demonstrate that he was prejudiced by his trial counsel's deficient performance. Id. This requires a showing that counsel's errors were so serious as to deprive Appellant of a fair trial, a trial whose result is reliable. Id. Additionally, "[a]n appellate court may analyze the second prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Lansberry, 9th Dist. No. 21006, 2002-Ohio-4401, at ¶ 16, citing State v. Loza (1994), 71 Ohio St.3d 61, 83.
{¶ 44} Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. When analyzing the reasonableness of trial counsel's challenged conduct, this Court must consider the facts of the particular case as they existed at the time of counsel's conduct. State v.Palmison, 9th Dist. No. 20854, 2002-Ohio-2900, at ¶ 31. Appellant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. Id. This Court must then decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id.
{¶ 45} In the instant case, Appellant has contended that trial counsel: (1) failed to request a jury instruction on either the inferior degree of aggravated assault, or the lesser included offense of domestic violence; (2) erroneously claimed that Appellant was an attorney during opening statement, resulting in cross-examination into Appellant's character and trial counsel's subsequent failure to object to questions posed during cross-examination; (3) failed to object to the testimony of the state's rebuttal witnesses, Mr. Dunn and Mr. Hare; (4) failed to object to the victim's testimony regarding Appellant's history of mental and physical abuse; (5) failed to object to the introduction of Appellant's prior burglary charge and conviction for misdemeanor criminal damaging; (6) failed to object to the testimony of Appellant's father regarding his prior testimony in a child custody hearing and his former belief that Appellant struck his wife; (7) failed to object to the admission of character evidence; (8) failed to object to the testimony of the victim's psychologist, Dr. Pazol; and (9) failed to object to the introduction of testimony explaining the Battered Woman Syndrome. This Court will address each claim in turn.
 Jury instructions.
{¶ 46} Appellant has argued that trial counsel's failure to request a jury instruction for domestic violence and aggravated assault was the "most egregious example" of counsel's deficient performance. This Court concludes, however, that trial counsel was not ineffective for failing to request jury instructions. As discussed in assignment of error two, Appellant claimed that he was innocent of any wrongdoing. This Court also held that the trial court did not commit plain error when it failed to give a jury instruction on the lesser included and inferior degree offense of felonious assault. A finding that there was no plain error necessarily means that Appellant's claim of ineffective assistance of counsel must fail as well. Thus, Appellant's claim that trial counsel was ineffective on this ground is without merit.
 Claim that Appellant was an attorney, and testimony of rebuttal witnesses.
{¶ 47} As to the second claim, this Court's ruling on assignment of error number four establishes that trial counsel did not "open the door" to allow the prosecution to cross examine Appellant regarding character and other wrongful acts. Moreover, this Court held that the impeaching testimony involving matters related to Appellant's ability to take the bar examination was properly admitted under Evid.R. 608(B). Thus, counsel was not ineffective under such theories.
{¶ 48} This Court's ruling that the inadmissible rebuttal testimony was harmless error disposes of Appellant's claim of ineffective counsel in that regard as well.
 Past history of mental and physical abuse.
{¶ 49} Appellant's claim that he was prejudiced by trial counsel's failure to object to the victim's testimony concerning Appellant's past history of mental and physical abuse is also without merit. The victim's testimony was properly admitted under Evid.R. 404(B), which states:
 {¶ 50} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
{¶ 51} We have previously held that "[p]rior bad acts by a defendant against the same victim are * * * admissible in domestic violence cases to prove the defendant's intent * * *." (Alterations sic.)State v. Blonski (1997) 125 Ohio App.3d 103, 113, appeal not allowed (1998), 81 Ohio St.3d 1521, quoting State v. Johnson (1994),73 Ohio Misc.2d 1, 3. In order to use prior bad acts to prove a defendant's intent, the prior bad acts and the offense for which the defendant is being tried must have occurred near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses. Blonski,125 Ohio App.3d at 113.
{¶ 52} In the present case, various witnesses testified to the violent relationship that existed between Appellant and the victim. More specifically, both Appellant and the victim testified that they would argue about such things as Appellant's parents' treatment of the victim, Appellant's ex-fiancée, and their son. These arguments would occasionally evolve into physical altercations, where Appellant would break the victim's belongings, lock her out the house, strangle her and, on one occasion, use a butcher knife to cut the victim's hair. These prior incidents of violence are probative of Appellant's intent to cause harm to the victim on October 10, 1999.
{¶ 53} Because the victim's testimony of the prior bad acts is admissible under Evid.R. 404(B), trial counsel's failure to object was not ineffective assistance.
 Prior charge and conviction.
{¶ 54} Next, Appellant has asserted that he was prejudiced when trial counsel failed to object to the introduction of a prior burglary charge and conviction for criminal damaging. During the prosecution's cross-examination, Appellant testified that he was charged with burglary after he broke down his father-in-law's apartment door. Trial counsel did not object to this testimony. A review of the trial transcript, however, reveals that trial counsel's failure to object to the charge of burglary was part of his trial strategy. Trial counsel chose to explain the charge to the jury, rather than object to the charge.
{¶ 55} It is well settled that "trial counsel's failure to make objections are `within the realm of trial tactics' and do not establish ineffective assistance of counsel." State v. McCroskey (Apr. 2, 1997), 9th Dist. No. 96CA0026, at 10, quoting State v. Hunt (1984),20 Ohio App.3d 310, 311. Accordingly, Appellant's fifth claim is also without merit.
 Prior child custody hearing.
{¶ 56} In Appellant's sixth claim, he has asserted that trial counsel did not object to the testimony of Appellant's father, Frank Cureton, concerning the father's former testimony in a prior child custody hearing. This claim is without merit because trial counsel made a timely objection to the father's testimony, and the objection was overruled. Furthermore, the trial court held that the father's testimony was admissible for the purpose of impeachment under Evid.R. 607(A) and 801(D)(1)(a).
 Inadmissible character evidence.
{¶ 57} Appellant has also argued that he was denied his Sixth Amendment right to effective assistance of counsel because trial counsel failed to object to Officer Steiner's testimony that Appellant was a "violent person" and to the victim's father's statement that Appellant was a "documented violent person." This Court rejects this claim as well.
{¶ 58} Ohio courts have consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel. See McCroskey, supra at 10. Trial counsel may not have objected to statements that Appellant was violent because he did not want to draw attention to the offensive testimony, and objections tend to disrupt the flow of the trial and can be considered technical and bothersome to a jury. State v. Davie (1997),80 Ohio St.3d 311, 331. It is not the appellate court's role to second-guess the strategic decisions of trial counsel. State v. Carter
(1995), 72 Ohio St.3d 545, 558.
{¶ 59} Even if we concluded that trial counsel should have made an objection, Appellant has failed to show that he was prejudiced. The victim, her father, and Appellant's father and mother testified to the unstable and violent relationship that existed between the victim and Appellant. After hearing this testimony, a jury did not have to be told that Appellant was a "documented violent person" to conclude that he was violent. Thus, Appellant was not prejudiced by the testimony and there is no reasonable probability that the outcome of the trial would have been different without this testimony. Therefore, we cannot conclude that trial counsel was ineffective for failing to object to such testimony.
 Dr. Pazol's testimony, and Battered Woman Syndrome.
{¶ 60} Finally, Appellant has contended that trial counsel's failure to object to Dr. Pazol's testimony concerning Appellant's prior incidents of abuse of the victim and the Battered Woman Syndrome ("BWS") deprived him of his right to the effective assistance of counsel. Dr. Pazol testified that during counseling sessions, the victim told him that Appellant would push, grab and hit her. This testimony, as we explained earlier in addressing the admissibility of the victim's testimony regarding Appellant's prior history of mental and physical abuse, is admissible under Evid.R. 404(B) to prove defendant's intent. See, also,Blonski, 125 Ohio App.3d at 113. It is certainly probative of Appellant's intent to cause harm to the victim in the early morning of October 10, 1999.
{¶ 61} Furthermore, Dr. Pazol's testimony regarding Appellant's mental and physical abuse of the victim is not objectionable as hearsay. The testimony was properly admitted under Evid.R. 803(4). Evid.R. 803(4) provides an exception to the hearsay rule; statements made for the purposes of medical diagnosis or treatment are admissible if such statements are reasonably pertinent to diagnosis and treatment. Dr. Pazol noted that the statements regarding the abusive history of the victim and Appellant's relationship were necessary in order for the victim to receive a proper psychological diagnosis. See, e.g., State v. Keenan, 9th Dist. No. 20528, 2002-Ohio-754, at ¶ 26; State v. Chappell,97 Ohio App.3d 515, 529-530. As this testimony was properly admitted, trial counsel was not ineffective for failing to object. See State v.McKinzie (June 5, 2001), 10th Dist. No. 00AP-1182, 2001 Ohio App. LEXIS 2495, at *40.
{¶ 62} We also conclude that trial counsel's failure to object to the admission of testimony regarding BWS was not ineffective assistance. Dr. Pazol did not diagnose the victim with BWS. Dr. Pazol testified: "My diagnoses of [the victim] was major depressive disorder, moderate in severity, recurrent without psychotic features, also generalized anxiety disorder." In addition, Dr. Pazol did not testify that the victim lied because of the effects of BWS. In fact, after trial counsel objected to any further explanation of BWS,[4] Dr. Pazol made no further mention of the syndrome. So when the prosecution later asked Dr. Pazol to explain why the victim would lie to protect Appellant, the doctor's response was bereft of any mention of BWS. Dr. Pazol explained that the victim lied because she wanted to keep her marriage and family together, and not because she was suffering from BWS.
{¶ 63} Based on the foregoing analysis, Appellant's third assignment of error is not well taken.
 III
{¶ 64} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
SLABY, P.J., BATCHELDER, J. CONCUR.
[1] An essential element of domestic violence is that the victim be a family or household member. R.C. 2919.25. A family or household member includes a spouse, parent or child residing with the offender. R.C.2919.25(E).
[2] Appellant has argued that trial counsel did not state that Appellant was an attorney during opening statement, but during voir dire. Regardless of when trial counsel actually made the statement, trial counsel failed to correct the trial judge's belief that the statement was made during opening statement. Moreover, the result would be the same even if the claim was expressed during voir dire.
[3] As discussed in assignment of error three, infra, testimony of the history of mental and physical abuse was admissible pursuant to Evid.R. 609; Dr. Pazol's testimony was admissible under Evid.R. 803(4); and Frank Cureton's testimony was admissible under Evid.R. 801(D)(1)(a).
[4] It is not entirely clear from the trial transcript, but it appears that the trial court may have sustained trial counsel's objection to further discussion of BWS. In any event, after the objection was made, Dr. Pazol did not discuss BWS and the prosecution did not ask any further questions regarding BWS.